## COOPER *v.* BORRALL.

10    491
24 SC 226
24 SC ¹227
24 SC 228

A purchaser at sheriffs' sale not moving to set it aside, cannot, in an action for the difference between his bid and a re-sale, object to an error in the levy describing the lands as situated in A. township, when in fact they were in B.

To a *sci. fa.* and *al. sci. fa.* on a mortgage there were returns of *nihil* as to the mortgagor, and appearance by the *terre-tenants.* The attorney then agreed in writing to withdraw his plea and confess judgment. The. plaintiff's attorney endorsed an order to enter *this* judgment and issue a *levari.* The prothonotary entered on his docket " Judgment." By the rules of court he had authority to enter judgment by default on writs of *sci. fa.* The judgment thus entered.is against the mortgagor by default on two *nihils,* and against the terre-tenants by confession, on which a *levari* may issue.

In error from the Common Pleas of Perry.

This action was brought to recover the· difference between the

price bid by defendant at two sales of land by the sheriff, and the price at which it was subsequently sold by him. The first count averred a levy and sale under a *vend. exp.*, subject to a prior mortgage to defendant. The second averred a subsequent levy and sale to him under a *levari*. Both counts averred a refusal by the defendant to pay the price bid, and that there had been a subsequent sale, &c.

The defence to the first count was a misdescription in the levy, which description was very minute and particular; but the lands were described as situate in Toboyne township, when in fact they were in Jackson township. After the return of the writ, the court on motion, amended the levy in this particular.

The defence to the second count was, that there was no judgment on which the writ issued.

The proceeding was a *sci. fa.* and *al. sci. fa.* against a mortgagor and *terre-tenants.* Both were returned *nihil* as to the mortgagor, and served as to the *terre-tenants*. McIntire and Anderson appeared for the *terre-tenants*. McIntire then signed the following: "I agree to withdraw the plea in this case, and that judgment be entered for $551.96, with interest from 1st November, 1846. B. McIntire, attorney for [the word not legible.]" Mr. McIntire stated this was "*terre-tenants.*" Endorsed was the following: "Enter this judgment and issue *lev. fa.* F. Watts, attorney for plaintiff." The docket entry was: "January 9, 1847, Benjamin McIntire, defendants' attorney, by his agreement in writing filed, withdraws the plea in this case, and agrees that judgment be entered for $551.96, with interest from 1st November, 1846.—9th January, 1847. Judgment." It is stated in the opinion of this court, that a rule of the court below allows the prothonotary to enter judgment by default on writs of *sci. fa.*

The court (HEPBURN, P. J.) was of opinion that the defect in the description was fatal to the first count, and the want of a judgment fatal to the second.

*Biddle*, for plaintiff in error.—The first point is ruled by Spang *v.* Schneider, *antè*, 193. If there was a judgment, the second sale was binding. The prothonotary had the power to enter the judgment by default, and the attorney agreed that it might be entered generally. The entry, therefore, of "judgment" is sufficient, for by our settled practice it means such a judgment as the plaintiff would be entitled to.

*Reed*, contrà.—The amendment was a nullity, for the court

cannot correct the sheriff's returns; they are his answers, and nothing else: Wat. on Shff. 68. Nor was there anything to amend by. This is an action by the sheriff, and he is bound to show that he misrepresented nothing: whereas, in fact, he pretended to sell a thing not in existence. The case referred to was, where the purchaser was himself the author of the blunder.

There was no judgment against the mortgagor. The entry is to be construed in connexion with the order, which is express—"this judgment"—that is, the judgment which the *terre-tenants* had agreed to confess. Such a sale is a nullity: 10 W. 51, 392; 1 W. & S. 527.

*June* 11. ROGERS, J.—The declaration contains two counts, in neither of which, as the court instructed the jury, is the plaintiff entitled to recover.

The defendant objects to the recovery on the first count, because, by the negligence of the sheriff, the property sold was described in the levy, inquisition, *venditioni exponas*, and in the deed, as being in Toboyne township, when, in truth and in fact, the land was in Jackson township. That it was a serious injury to the purchaser, because a cloud is thrown over his title, and therefore he was not bound to accept a deed for land described in the wrong township; which, upon its acceptance, might lead but to the commencement of difficulties, in order to discover where it was situated. That the value of the property to the purchaser sometimes depends on the township where it is located; as, for example, in the vicinity of friends and relatives; and moreover, the taxes assessed are not, as is asserted, uniform in the townships for local purposes. That these causes sometimes exist, is admitted; and hence the propriety of the law which requires that an application shall be made, on the return of the writ, to set aside the sale, that the court may have the opportunity to inquire into the truth of the alleged facts, to determine on the validity, and to amend, if necessary, any irregularities in the sale. Had this course been pursued, it would have been difficult to persuade the court that these were the true reasons of the unwillingness of the purchaser to abide by his bid. It is not easy to understand how he could have been misled as to the location of a tract so valuable and so particularly described. The boundaries are set out, the number of acres in the whole tract are given, of which 166 acres are cleared, 40 acres of meadow described, having thereon three apple-orchards, a two-story stone house, two log-houses, three barns and a stable, a spring of water,

spring-house, and three wells of water. As to the alleged difference in the taxes of the township, that is not shown to exist, nor is it proved that its value was affected in the eye of the purchaser by its being situated in Jackson rather than in Toboyne township. These are mere supposititious cases, put by the counsel, which, if proved, might perhaps have been cause for setting aside the sale.

The misdescription in the levy and deed is nothing, as that objection could have been readily obviated, by amendment, by order of the court, or by consent of parties. As, however, the purchaser, for reasons of his own, has not thought proper to pursue the regular course, he cannot be permitted to fold his arms, and, after suit, point to irregularities in the process, which do not affect the title, and which would have been instantly corrected. It will not be pretended, that the irregularity here complained of would invalidate the title, in the hands of the vendee of the sheriff. I do not distinctly perceive the analogy between a private contract and a judicial sale. The one is the act of the parties, the other of the officer of the law. For, admitting (which would only be so under particular circumstances), that if an individual, desirous of purchasing land in a particular township, to be near his friends and relatives, contracts for such land with a private person, he would not be bound to take lands in another township, in a different part of the county; yet, I cannot perceive its application to this case, where none of the supposed facts exist. The objection merely is, that the land is situated in Jackson, instead of the adjoining township of Toboyne. As has been before said, if it had been shown at the proper time and place, that the purchaser was deceived or injured by the mode and manner of sale, or the location of the land, or its description, that would have been ground for relief, by setting the sale aside; but having intermitted his time, it is clearly no defence in this action. And, be it remarked, sheriffs' sales are not set aside on slight grounds, or fanciful exceptions; for it almost invariably happens, for obvious reasons, that a re-sale is attended with a reduction of the price bid for the land, very much to the injury of creditors and owners. Speculators, at judicial sales, are not to be encouraged. They bid at their peril, and are supposed to be acquainted with the location of the property, and its title; and, if they are not, they, and not the creditors and debtors, must stand the loss.

The docket contains the following entry: "9 January, 1847: on motion of Mr. Watts, the levy on the *fi. fa.*, issued in this case, *amended*, as to the township in which the land is situated, so as to

make it read Jackson, instead of Toboyne township." The plaintiff in error has entered into an argument to prove that the court had no power to amend the levy, as to any material fact; that could only be done by the sheriff, on leave given to him. Whether this distinction be well taken, we are not called on to decide, as it is wholly immaterial, as this cause will be ruled on grounds irrespective of the amendment.

The court also decided, that the plaintiff could not recover on the second count. We proceed now to consider that part of the charge. [His honour here stated the facts.] If there was no judgment against the mortgagor, as the court supposes, the action on the second count cannot be supported. This is conceded. The title being absolutely void, as is ruled in Gregg *v.* Patterson, 9 W. & S. 204.

The purchaser is not bound to make any application to the court to set aside the sale, but he may, I grant, take defence in this action. The act of 1705 does not apply to a title where there is no judgment, but to the record of an erroneous or irregular judgment. There is, in such case, no judgment to reverse, and no title passes to the purchaser. Was there, then, an erroneous or irregular judgment, or was there no judgment whatever, is the question. This point simply, as it affects this case, is nothing, but as the principle on which it is ruled may seriously endanger many titles in this state, it becomes of serious practical importance and moment. It is obvious that if we yield to nice exceptions to judgments, such is the looseness of our practice, that it is impossible to foretell where the mischief will end. On these considerations, we feel ourselves constrained, however reluctantly, to differ with the Court of Common Pleas. We believe there is a judgment, not so formal, to be sure, as it might be, but still we think a judgment was rendered, as well against the mortgagor as against the *terre-tenants*. We must not listen to hypercritical exceptions, but we are in a measure compelled to make every intendment in favour of the regularity of the proceedings. We cannot but think that if this case had arisen on the validity of the title of the sheriff's vendee, tested in an action of ejectment to recover the property from him, it would hardly admit of argument; and yet the question is the same, and the mischief the same, in an action such as we are now trying. The record shows there were two *nihils* returned to the same *scire facias*, as to the mortgagor. This is equivalent to service, and therefore, the plaintiff, as must be conceded, was entitled to judgment. Now, admitting the judgment (which I am

not disposed to deny) must be entered either on application to the court, or by the prothonotary, under the rule of the court, yet, that the judgment was actually entered, need not expressly appear. According to an inveterate practice, which it is too late now to alter, judgments are entered in short, seldom, if ever, set out in due form, as the act either of the court or the prothonotary. The record here runs thus. [His honour stated it.]

The defendant contends that this is a judgment against the *terre-tenants* alone, for whom McIntyre was counsel, and that the order of Mr. Watts to the prothonotary only extends to a direction, that he should enter judgment against them alone. But, this is being hypercritical overmuch, and contrary, as would appear, to the obvious intention of the parties. McIntyre, whether counsel for the mortgagor or not, which of itself is doubtful, assumes to be counsel for all. He agrees that judgment be entered for a certain sum, and not *de terris*, as he ought to have done, on the hypothesis that he was counsel for the *terre-tenants* alone. And, although Mr. Watts does say, on the back of the agreement, "Enter *this* judgment," (rather loose and equivocal, it must be admitted,) yet, he at the same time accompanied it with a direction to the prothonotary to issue a *levari facias*, which he well knew could not be legally done, unless judgment was entered also against the mortgagor. This, therefore, was an order, substantially, to enter judgment against all the parties; which was, in effect, done according to our practice, by the general entry, "9 January, 1847. Judgment;" that is, judgment against all against whom judgment may be legally entered. And so the prothonotary understood it, for after the entry, on the same day, he proceeds to issue the *levari facias*, reciting a debt, &c., which John Abernethy, &c., by *consideration* of the court, recovered against Simon Mortland, with notice to the *terre-tenants*, &c. It therefore appears from the record, that the judgment was entered on *consideration* by the court; and if so, although entered in general terms, in support of the title of a sheriff's vendee, it must be taken as a judgment as well against the mortgagor as against the *terre-tenants*. Besides, if taken as the act of the prothonotary, it is a good judgment against all, under the 67th rule of court, which recites that, "in writs of *scire facias*, if the defendant do not appear, or manifest of record an intention of making a defence by the first day of the term to which the writ is returnable, judgment may be entered at any time thereafter by the prothonotary." That he had the power to enter judgment in this case, on the return of two *nihils* against the mort-

gagor, is clear and unquestionable; and that he has performed this duty, by the entry of judgment generally, and the issuing of a *levari facias* reciting the judgment against the mortgagor, we think is sufficiently apparent to support the proceedings.

Judgment reversed, and a *venire de novo* awarded.